UNITED STATES DISTRICT COURT
FOR
THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION

| | |
|---|---|
| Joan Rabushka, | ) |
|         Plaintiff | ) |
| | )  Motion for Declaratory and Injunctive |
| | )  Relief |
|     vs. | ) |
| | ) |
| | )  Case No.: 4:21-cv-00431 |
| Association of Social Work Boards | ) |
|         Defendant | )  Request for Expedited Hearing and Jury |
| | )  Trial |

## MOTION FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, by and through undersigned counsel, and in accordance with Rule 65,

Federal Rules of Civil Procedure, requests that this Court enter a preliminary injunction

ordering Defendants to provide Plaintiff with a reasonable accommodation for her

disability, specifically, the testing accommodations originally approved by the Defendant

and accepted by the Plaintiff, which were subsequently rescinded by the Defendant and

no alternate testing accommodations were proposed.

## PARTIES

1. The Plaintiff, Joan Rabushka, at all times relevant to this case, is a resident of the St.

   Louis, Missouri metro area and the location designated for the Plaintiff to take the

   ASWB exam is Maryland Heights, Missouri, a suburb in the St. Louis metro area. The

   Plaintiff is, at all times relevant to this case, an otherwise qualified individual with a

   disability. The Plaintiff is working to obtain licensure as a social worker in Missouri

   and has satisfied all the requirements to sit for the Association of Social Work Boards

(ASWB) exam. The exam is the final barrier to the Plaintiff becoming a licensed social worker.

2.  The Defendant, the Association of Social Work Boards (ASWB), is a nonstock corporation chartered and headquartered in Virginia. The Defendant's self-described mission is to, "provide support and services to the social work regulatory community to advance safe, competent, and ethical practices to strengthen public protection". The Defendant is responsible for administering the exam required for licensure as a social worker in the state of Missouri, as well as for the provision of reasonable accommodations to test-takers with disabilities.

## JURISDICTION

3.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under the Americans with Disabilities Act (the "ADA") and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) ("Section 504"). This Court has jurisdiction over Plaintiffs' claims for declaratory relief and injunctive relief pursuant to 28 U.S.C. § 2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

## VENUE

4.  Venue is proper in this in the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b) because the events, acts, and omissions giving rise to Plaintiffs' Case occurred within this District and because Defendant resides in the Eastern District of Missouri within the meaning of 28 U.S.C. § 1391(d).

## STATEMENT OF FACTS

5.  The Plaintiff is an individual with a disability as defined by the Americans with Disabilities Act (ADA)

6.  The Plaintiff is a Licensed Master Social Worker (LMSW) in Missouri and she is pursuing licensure as a Licensed Clinical Social Worker (LCSW) in Missouri.

7.  The state of Missouri requires that anyone seeking LCSW licensure must satisfy the following requirements:

   a.  Hold an active license as an LMSW

   b.  Obtain employment and register for supervision with the state of Missouri

   c.  Complete 3000 hours of supervised practice over 24 months

   d.  Provide fingerprints for background checks

   e.  Sit for and pass the LCSW exam

8.  The supervised practice hours are only good for 48 months from the date performed and will expire if the applicant has failed to pass the LCSW exam inside of the 48-month period.

9.  The Plaintiff began performing her supervision hours in August of 2017.

10. As of May 2020, the Plaintiff had satisfied all of the above requirements except passage of the exam.

11. The Defendant is responsible for administering and scoring the LCSW exam for the state of Missouri

12. In order to sit for the LCSW exam, an applicant must:

   a.  Obtain an email from their supervisor stating supervisee is on track to meet, or has completed, the requisite supervision hours and months

   b.  Submit required documents to the Missouri Department of Insurance, Financial Institutions, and Professional Registration, who will then issue a letter approving the applicant to sit for the exam.

      c.   Register for the exam with the Defendant

      d.   Pay the fee to the Defendant

      e.   Obtain an Authorization to Test letter from the Defendant

13. Prior to submitting an application to sit for the LCSW exam, a person seeking reasonable accommodations for a disability is required to submit a Request for Nonstandard Testing Arrangements (NTA) to the Defendant.

14. Once NTAs are approved by the Defendant and accepted by the applicant, the applicant may register for the test.

15. Although Defendant is contracted with PearsonVUE (Pearson), who provides testing locations and staffing to administer the LCSW exam in Missouri, under its agreement with Pearson, the Defendant is responsible for coordination and provision of disability related testing accommodations.

16. There are no set dates upon which the LCSW exam is given. The exam is administered by appointment only.

17. The LCSW exam is administered on a computer through a secure testing program.

18. In March of 2020, the World Health Organization declared the SARS-CoV-2 virus (Covid 19) had reached pandemic stage.

19. In April of that same year, the Centers for Disease Control (CDC) recommended masks be worn in public to significantly minimize the transmission of Covid 19.

20. In May of 2020, Pearson implemented a nationwide policy which required that masks be worn by everyone in a Pearson testing facility, regardless of individual circumstance or need.

21. That same month, the Plaintiff began filling out the Request for NTA form, required by the Defendant.

22. By May 25th, the Plaintiff had submitted all the forms required by the Defendant, including medical information from the Plaintiff's therapist, to obtain accommodations for her disability.

23. The Defendant requested no more information from the Plaintiff, nor did the Defendant inform the Plaintiff of any significant concern over the Plaintiff taking the test without a mask.

24. In August of 2020 the Plaintiff received notification from the Defendant that the Plaintiff would be provided a private room to take the test mask free.

25. In addition, an expedited check-in process would be provided to minimize the amount of time the Plaintiff would need to wear a mask while in the common areas.

26. No mention was made of Pearson's mask requirement, even though the policy was in effect at the time.

27. The Plaintiff continued to negotiate with the Defendant regarding accommodations for the common area, as she would still have to wear a mask.

28. Through the end of October and the first week of November, the Plaintiff attempted to clarify if the Defendants accommodations required her to wear a mask in the common areas, or if a face shield would suffice.

29. On November 9, the Defendant issued a letter clarifying that the Plaintiff's request for use of a private room and an expedited check-in process was approved, but the

Defendant still required that the Plaintiff wear a mask in the public area while around others.

30. The Plaintiff accepted these accommodations.

31. The Defendant never mentioned the Pearson mask requirement.

32. Just 9 days later, the Plaintiff received an email from Jessica Johnson, Examination Services Coordinator for the Defendant, informing her that she will be required to wear a mask in order to sit for the exam, regardless of the Plaintiff's disability.

33. In the letter, the Defendant explained that, because Pearson required that masks be worn at all times while in Pearson testing facilities, the Defendant would not accommodate her disability by providing an opportunity to test without a mask.

34. On December 29, the Plaintiff, by and through legal counsel, sent a letter to the Defendant requesting that the Defendant honor their initial commitment and provide the Plaintiff with the accommodations the Defendant had initially approved.

35. On January 15, 2021, the Defendant sent a letter, via email, in response to the Plaintiff's request for reconsideration of the Defendant's decision concerning the Plaintiff's accommodations for her disability.

36. The letter informed the Plaintiff that Pearson believes that taking the test without a mask would pose a "direct threat" to the health and safety of the test takers and staff.

37. Although the letter does not state that the Defendant believes that taking the test without a mask would pose a "direct threat", the Defendant concludes the letter by affirming the denial of accommodations for the Plaintiff's disability.

## NEED FOR INJUNCTIVE RELIEF

38. Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981)

39.  However, the factors are to be applied in context, with no one factor more determinative than another. *Id.* "The likelihood that plaintiff ultimately will prevail is meaningless in isolation". *Id.*

40. Although a plaintiff must satisfy all four factors, the presence of irreparable harm, and the absence of a legal remedy are the catalysts for the application of injunctive relief in the federal courts. *Bandag v. Jack's*, 190 F.3d 924 (8th Cir. 1999) The Plaintiff meets each of these four requirements.

### *Threat of Irreparable Harm*

41. Plaintiff realleges and incorporates by reference each allegation contained in each aforementioned paragraph as thoughtfully set forth herein.

42. To establish a threat of irreparable harm, the party seeking injunctive relief must show that the harm is actual and imminent, so that there is an ascertainable and immediate need for injunctive relief. *Packard Elevator v. I.C.C.*, 782 F.2d 112 (8th Cir. 1986)

43. The party seeking relief must prove that the harm occurred in the past and is likely to occur again, or that the harm is certain to occur in the near future. *Id.*

44. In addition, the party seeking relief must demonstrate that the harm suffered outweighs the harm created by granting the injunction . *Davis v. Francis Howell School Dist.,* 104 F.3d 204 (8th Cir. 1997)

45. Although unable to locate precedential decisions in this court similar to this case, other courts have held that an examiner's refusal to provide accommodations does cause the exam-taker irreparable harm.

46. Courts in several other circuits have held that irreparable harm is committed when denial of reasonable testing or exam accommodations will jeopardize or delay the opportunity to pursue a chosen profession.  *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251 (3rd Cir. 2020); *Enyart v. Nat'l Conf. of Bar Exam'rs*, 630 F.3d 1153, 1166 (9th Cir. 2011); *Bonnette v. Dist. of Columbia Court of Appeals*, 2011 WL 2714896, at 19 (D.D.C. July 13, 2011); *Elder v. Nat'l Conference of Bar Examiners,* 2011 WL 672662, at 6 (N.D.Cal. Feb. 16, 2011)*Agranoff v. Law School Admission Council, Inc.*, 97 F. Supp. 2d 86, 88 (D. Mass. 1999); *D'Amico v. N.Y.S. Bd. of Law Examiners*, 813 F. Supp. 217, 221 (W.D.N.Y. 1993); *Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677 (S.D. Ohio 2012)

47. If required to take the test wearing a mask, the Plaintiff has demonstrated that her disability will prevent her from doing so.

48. In order to be able to even apply for the test, the Plaintiff took over 2 years to obtain the requisite supervision hours, and they begin to expire in August of 2021.

49. If the Plaintiff is unable to take and pass the exam by the end of August 2021, the hours of supervision that will expire at the end of August will place her below the

required threshold of 3000 hours of supervised practice, and the Plaintiff will no longer be eligible to apply for the exam until she replaces the hours of supervision she lost.

50. Past August of 2021, The Plaintiff's hours of supervision will continue to expire each month, requiring the Plaintiff to obtain more supervision hours before she can even apply to sit for another exam.

51. In addition, although the Plaintiff is an LMSW, she is not permitted to work independently with patients in a clinical setting, operate her own private practice, or bill insurance companies directly for her services without an LCSW license.

52. The Defendant provided no specific deadline or set of benchmarks that, if met, would allow the Plaintiff to take the exam without masks, making the possible number of lost supervision hours and lost time spent in independent practice indefinite .

53. Like the Plaintiffs in *Elder, Bonnette,* and *Enyart*, ect., the Defendant's requirement will cause irreparable harm because the Plaintiff will have to delay taking the test until masks are no longer required and repeat supervision hours that she had already obtained, thus delaying her ability to sit for and pass the LCSW exam even longer.

54. The Defendant's mask requirement will, for an indefinite amount of time, both delay and jeopardize the Plaintiff's pursuit of her chosen profession, causing her irreparable harm.

*Balance of Harms Between Parties*

55. Plaintiff realleges and incorporates by reference each allegation contained in each aforementioned paragraph as thoughtfully set forth herein.

56. Regardless of the decision in this case, the balance of harm overwhelmingly favors the Plaintiff.

57. Should the court deny this motion, the Plaintiff will be unable to take the exam and her supervision hours will expire.

58. This would render the Plaintiff ineligible to apply for the LCSW exam, or request NTA's, and she would have to obtain more hours of supervision to replace those that had expired, all for an indefinite amount of time.

59. Should the court grant the Plaintiff's motion, the Plaintiff will still have to wear a mask at the testing site, if only for a brief time.

60. Conversely, the Defendant would suffer little, if any, harm from being required to provide the Plaintiff with accommodations.

61. The Defendant was ready and willing to provide the Plaintiff with an opportunity to take the test, with minimal mask usage required only in the general use areas of the testing facility.

62. Plaintiff had agreed to the accommodations.

63. The Defendant's reason for denying the Plaintiff her previously approved accommodations is that the policy of one of its contractors, Pearson, had changed; not that the accommodations were unreasonable.

64. The Defendant has not claimed that the provision of these accommodations outside of the contractual relationship with Pearson is prohibited, or would cause the Defendant difficulty or harm.

65. There is no discernable harm that could befall the Defendant due to the application of the requested injunctive relief.

*The Probability of Success on the Merits*

66. Plaintiff realleges and incorporates by reference each allegation contained in each aforementioned paragraph as thoughtfully set forth herein.

67. The relevant facts and circumstances of this case show that the Plaintiff is substantially likely to obtain a favorable judgement at trial.

   1. **The Defendant, not Pearson, is the party responsible for ensuring that people with disabilities are not prevented from taking the test by reason of their disability.**

66. The State of Missouri identifies the Defendant as the sole organization responsible for administration and scoring of the LCSW exam

67. According to both the Defendant and Pearson, the Defendant is responsible for coordinating all accommodations to ensure individuals with disabilities are not prevented from taking the test as a result of their disability.

68. The Defendant has stated that, but for the policy of Pearson requiring all individuals to wear a mask regardless of disability, the Defendant would provide the accommodations requested by the Plaintiff.

69. Although Pearson has claimed a "direct threat" exception to the Plaintiff's requested accommodations, the Defendant has yet to claim the accommodations would pose a "direct threat".

70. Essentially, the Defendant is denying the Plaintiff reasonable accommodations because Pearson will not let the Defendant provide the accommodations to which the Defendant and the Plaintiff agreed.

71. However, under the Department of Justice (DOJ) regulations implementing the ADA, a business shall not utilize criteria that have the effect of discriminating on the basis of disability even if contractually required. 28 CFR § 36.204

72. The law does not allow the Defendant to fail to provide reasonable accommodations, which is a discriminatory act, because they are contracted with Pearson to provide testing services and Pearson has refused to provide the Plaintiff's requested accommodations.

73. Due to the Defendant's obligation to provide testing in the state of Missouri, the Defendant's acknowledgement that they are responsible for providing reasonable accommodations for test-takers with disabilities, the Defendant's initial approval of the Plaintiff's requested accommodations, the failure of the Defendant to make any claim that the Plaintiff's requested accommodations are unreasonable, and the ADA's prohibition on contract terms limiting the responsibility of the Defendant for providing reasonable accommodations, this court could easily find in favor of the Plaintiff.

**2.  Plaintiff has a substantial likelihood of success in defeating the Defendant's possible "direct threat" defense.**

74. The Defendant appears to rely tangentially on the "direct threat" defense in its denial of the Plaintiffs accommodations and, therefore, will be addressed by the Plaintiff.

75. The ADA does not require a place of public accommodation to allow an individual to enter or participate in the benefits of a place of public accommodation if the individual will pose a "direct threat" to the health and safety of others. 28 CFR § 36.208(a)

76. Direct threat means "a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids or services". 28 CFR § 36.104

77. The ADA does not require that a person present a risk, it requires that the risk be "significant". *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)

78. The determination of risk must be from the perspective of the party who refused the accommodation. *Id.*

79. The determination must be based on "an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence". 28 CFR § 36.208(b)

80. In making these determinations, "the views of public health authorities, such as the U.S. Public Health Service, CDC, and the National Institutes of Health, are of special weight and authority". *Abbott*, 524 at 627

81. The factors to be included in determining a "direct threat" are: (1) the nature, duration, and severity of the risk; (2) the probability that the potential injury will actually occur; (3) whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk. 28 CFR § 36.208(b)

82. The Defendant has not made an individualized determination that the Plaintiff would pose a significant risk to the health and safety of others if she is allowed to take the test without a mask.

83. The Defendant did not review the "best available objective evidence" to arrive at the determination that the Plaintiff poses a "direct threat".

84. The Defendant did not identify the nature, severity, or duration of the risk posed by the Plaintiff taking the LCSW exam without a mask.

85. The Defendant did not assess whether modifications to policy or provision of aids would mitigate any risk that might be posed by the Plaintiff taking the exam without a mask.

86. Because the Defendant failed to identify the Plaintiff as a direct threat through the process required under the ADA and has yet to claim any other exception to the provision of reasonable accommodations, then the Defendant's refusal to provide the Plaintiff with the accommodations the Defendant originally proposed is in express violation of the ADA's prohibition on disability discrimination in public accommodations.

*The Public Interest*

87. Although there is broad public interest in maintaining a safe and healthy society, especially during a pandemic, that interest fails to tip the balance of equities in favor of denying the preliminary injunction.

88. The robust public interest in promoting the equality of all persons was expressed in passage of the ADA; the creation of a clear and comprehensive national mandate for the elimination of discrimination against such individuals. 42 U.S.C. § 12101.

89. The DOJ has issued several statements over the past year explaining that the pandemic did not alter, in any way, the mandate that every place of public accommodation adhere to the requirements of the ADA.

90. Because the DOJ continues to enforce all provisions of the ADA during the pandemic, even while thousands of people die every day from a communicable disease, demonstrates that public interest in the equality of all persons, which is the basis of the ADA, stands equivalent to the public interest in the preservation of a safe and healthy society.

## PRAYER FOR RELIEF

91. WHEREFORE, the Plaintiff respectfully prays that this Court:

    a. Declare that Defendant's failure to provide the accommodations approved by the Defendant on November 9, 2020 violates Title III of the Americans with Disabilities Act;

    b. Issue an injunction requiring the Defendant to provide the accommodations they proposed to the Plaintiff in the November 9 email,

which provided for a private room to take the test and an expedited

check-in process;

c.   Award costs and reasonable attorneys' fees; and

d.   Award such other and further relief as the Court deems just and proper.

Dated this April 2, 2021

Respectfully submitted,


/s/ *Benjamin Brockert*


Benjamin Brockert #69805
Attorney for Plaintiff
Brockert Legal Services
2109 Pattywood Drive
Bryant, AR 72022
ben@brockertlegal.com
(501) 620-3793